**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,** | * | |
| **Plaintiff,** | * | **Civ. No. MJM-21-2413** |
| **v.** | * | |
| **DR. JAYANTA BHATTACHARYA, et al.,** | * | |
| **Defendant.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

This matter is before the Court on the parties' cross-motions for summary judgment, ECF Nos. 159 & 163. Before the briefing of these motions was completed, the research studies funded by the grants challenged in this action were completed. As explained below, and as the defendants argue in their motion, the case is now moot. Accordingly, the case shall be dismissed, and the summary judgment motions shall be denied as moot.[1]

## I. FACTUAL BACKGROUND

Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA") is the largest animal rights organization in the world and is dedicated to protecting animals from all forms of cruelty. ECF No. 159-2 (Guillermo Decl.), ¶¶ 3–4. While its advocacy efforts span across several areas,

[1] The Board of Regents of the University System of Georgia on behalf of August University, the Trustees of Boston University, the University of Pittsburgh, and the American Thoracic Society filed a motion for leave to file an amicus brief in support of the defendants' summary judgment motion. ECF No. 165. Amici's motion shall also be denied as moot.

including the food industry and clothing trade, PETA places a particular emphasis on animal experimentation issues. *Id.* ¶ 5.

The defendants are United States Department of Health and Human Services ("HHS"), National Institutes of Health ("NIH"), the HHS Secretary, and the NIH Director (collectively, "Defendants").[2] NIH is an operating division of HHS, and is headquartered in Bethesda, Maryland. ECF No. 1, ¶¶ 1, 28–29; ECF No. 87, ¶¶ 1, 28–29. It is the largest public funder of biomedical research in the United States. ECF No. 1, ¶ 1; ECF No. 87, ¶ 1. As a "steward of medical and behavioral research for the Nation[,]" NIH is responsible to Congress and the U.S. taxpayer for carrying out its mission cost-effectively and in compliance with applicable rules and regulations. ECF No. 1, ¶ 51 (citation omitted); ECF No. 87, ¶ 51.

NIH contains certain institutes that authorize biomedical research funding, including funding for sepsis research. ECF No. 1, ¶ 1; ECF No. 87, ¶ 1. According to the Centers for Disease Control and Prevention ("CDC"), "in a typical year," at least 1.7 million American adults develop sepsis, which is "the body's extreme response to an infection." ECF No. 1, ¶ 2; ECF No. 87, ¶ 2. "[W]ithout timely treatment, sepsis can rapidly lead to tissue damage[] [and] organ failure[.]" *Id.* (third alteration in ECF filings). CDC reports that one in three people who die in a hospital had sepsis during their hospitalization. *Id.*

To better understand sepsis, NIH funds sepsis research involving both humans and non-human species, the latter category most commonly being mice. ECF No. 1, ¶¶ 1, 66; ECF No. 87, ¶¶ 1, 66. Since fiscal year 2014, institutes within NIH have authorized more than $240 million in funding for sepsis research involving animals. ECF No. 1, ¶ 65; ECF No. 87, ¶ 65. While there are some approaches to studying sepsis that do not involve animals, the NIH and broader scientific

[2] The docket shall be updated to reflect the current occupants of these offices: Robert F. Kennedy, Jr. is the current Secretary of HHS, and Dr. Jayanta Bhattacharya the current Director of the NIH.

community's position is that such approaches should not be pursued in isolation; both animal and non-animal approaches are important to establish evidence for translating research into clinical intervention. ECF No. 1, ¶¶ 5, 70; ECF No. 87, ¶¶ 5, 70.

Since at least 2008, PETA has been aware of the use of animals, including mice, in sepsis research. ECF No. 159-2, ¶ 11. However, it did not begin focusing its efforts on such research until it learned of a 2013 study by Junhee Seok et al. (hereinafter, "Seok Study"), and a February 19, 2013, blog published by Dr. Francis Collins, the former Director of the NIH. *Id.* Since 2013, PETA has conducted sepsis-focused demonstrations in various locations across the country, published numerous online and written material addressing sepsis experiments on animals, and sent communications to NIH and academic institutions conducting sepsis experiments. ECF No. 1, ¶ 72; ECF No. 87, ¶ 72; ECF No. 159-2, ¶¶ 22–23; ECF Nos. 159-4 & 159-5. PETA's NIH-directed communications have only increased since this lawsuit began. ECF No. 1, ¶¶ 17, 19; ECF No. 87, ¶¶ 17, 19. Such advocacy has required PETA to divert resources that would have otherwise been devoted to other business activities in support of its core mission. ECF No. 159-2, ¶¶ 7, 10, 13, 16, 18–19; ECF No. 159-3 (documenting travel costs).

At issue in this case are five research grants NIH awarded to fund sepsis research involving animals and the use of two sepsis-inducement methods—cecal ligation puncture ("CLP") and lipopolysaccharide ("LPS"). ECF No. 1, ¶¶ 29, 74; ECF No. 87, ¶¶ 29, 74; ECF No. 159-2, ¶ 24. NIH awarded grants to the following institutions seeking to perform this research: the University of Pittsburgh ("Grant 1R21NS121504"), with Rajesh K. Aneja as the principal investigator; Texas A&M AgriLife Research ("Grant 1R21AI152050"), with Yanan Tian as the principal investigator; Boston University Medical Campus ("Grant 1R21AI147168"), with Daniel G. Remick as the principal investigator; and Augusta University ("Grant 1R21AI150723"), with Paul M. O'Connor

as the principal investigator. ECF No. 1, ¶¶ 77, 84, 87, 92; ECF No. 87, ¶¶ 77, 84, 87, 92; ECF No. 163-2 (Lorsch Decl.), ¶¶ 6–9. All four of the foregoing research projects were completed by January 31, 2024. *See* ECF No. 163-2, ¶¶ 6–9.

A fifth grant was awarded to the University of Pittsburgh but was transferred to the Ohio State University and then transferred again to Feinstein Institutes for Medical Research ("Grant 1R01AI152044"). ECF No. 1, ¶ 80; ECF No. 87, ¶ 80; ECF No. 163-2, ¶ 10. The principal investigator affiliated with that grant is Meihong Deng. ECF No. 163-2, ¶ 10. The period for this research project ended on January 31, 2026. *Id.* Following the completion of the project, Deng submitted a "competitive renewal" application for Grant 1R01AI152044, which requires it to be subject to a new round of peer review and Advisory Council review. *Id.* ¶ 11. The application competes against others for grant funding and is not guaranteed to receive an award. *Id.*

## II. PROCEDURAL BACKGROUND

PETA initiated this civil action under the Administrative Procedure Act ("APA") on September 20, 2021, challenging (1) Defendants' approval of grants to conduct sepsis experiments on animals and (2) the NIH's alleged policy, pattern, and practice of approving grants "for inherently flawed animal-sepsis studies[.]" ECF No. 1, ¶¶ 96, 98. Following several consent motions of extensions of time, and orders granting those motions, Defendants moved for dismissal on April 21, 2022. ECF No. 36.

After briefing was completed, the Honorable Paula Xinis entered a Memorandum Opinion and Order granting in part and denying in part Defendants' motion. ECF No. 69 & 70. Specifically, the Court granted Defendants' motion to dismiss the Complaint's second cause of action for failure to state a claim and expressly limited the first cause of action to challenging the five grants described in Part I *supra*, which were specifically identified in the Complaint. *Id.* Thereafter,

Defendants filed an Answer addressing the Complaint's remaining allegations and later amended their Answer. ECF Nos. 73 & 81. The case was transferred to the undersigned district judge in November 2023.

On December 13, 2023, Defendants filed the administrative record ("AR") for this case, ECF Nos. 111 & 112, and later supplemented the record, ECF No. 128. On September 5, 2024, PETA filed a motion for admission of extra-record evidence, ECF No. 141, which the Court later granted in part and denied in part, ECF No. 152. After consulting the parties, the Court then entered briefing schedule for cross-motions for summary judgment. ECF No. 156.

PETA filed its motion for summary judgment on December 17, 2025. ECF No. 159. On March 13, 2026, Defendants responded in opposition to the motion and filed their cross-motion for summary judgment. ECF Nos. 163 & 163-1. The motions were fully briefed by May 12, 2026, and are ripe for disposition.

## III. DISCUSSION

In their summary judgment motion, Defendants argue that the case is moot because the studies funded by the challenged grants are completed, leaving no relief for this Court to grant to redress any injury and depriving PETA of standing. ECF No. 163-1 at 11–14; ECF No. 173 at 4–7. In opposition to Defendants' motion, PETA argues that the case is not moot because an injunction against Defendants funding CLP- and LPS-based sepsis experiments remains available, and PETA has standing to seek this relief. ECF No. 172 at 9–13. The parties also dispute whether the AR provides rational support for Defendants' approvals of the challenged grants, but the Court cannot reach the merits of this dispute because, as explained below, it agrees with Defendants that the case is moot.

"The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction, which extends only to actual cases or controversies." *Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021) (quoting *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)); *see also* U.S. Const. Art. III, § 2 (limiting federal courts' jurisdiction to "cases" or "controversies"). "[F]ederal courts lack jurisdiction to decide moot cases." *Otter Point Dev. Corp. v. U.S. Army Corps of Eng'rs, Baltimore Dist.*, 116 F. Supp. 2d 648, 651 (D. Md. 2000) (citing *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). For a case to be justiciable under Article III,

> the conflict between the litigants must present a "case or controversy" both at the time the lawsuit is filed *and* at the time it is decided. If intervening factual . . . events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented.

*Ross v. Reed*, 719 F.2d. 689, 693–94 (4th Cir. 1983) (emphasis in original).

The instant action is now moot. As of January 31, 2026, all five of the research projects funded by the NIH grants challenged in this action were completed, and all five grants were spent. Now that all five studies have been completed, there is no live controversy between the parties and no relief for this Court to grant.

PETA concedes that vacatur of the challenged agency actions and remand to the agency "would not be an effective remedy under the circumstances[,]" ECF No. 172 at 9, but maintains that the Court may grant a permanent injunction against Defendants funding CLP- and LPS-based sepsis experiments, *id.* at 13–15. But in its Memorandum Opinion and Order of March 21, 2023, the Court confined this case to PETA's APA challenge to the five grants identified in the Complaint and dismissed PETA's claim for broader relief against NIH's grantmaking policies and practices.

The reason for that limitation is clear. Under the APA, PETA could only seek judicial review of a "final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704. "To constitute 'final agency action' within the meaning of Section 704," "the challenged action must be 'circumscribed and discrete[,]'" and it "must be 'final.'" *NAACP v. Bureau of the Census*, 945 F.3d 183, 189 (4th Cir. 2019) (citations omitted); *see also* ECF No. 69 at 11 (citing *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 194 (4th Cir. 2013)).[3]

Here, the Court determined that, "[a]part from the five named grants," PETA's Complaint "swe[pt] too broadly." ECF No. 69 at 10. Specifically, PETA's second count sought broad relief against NIH's "ongoing policy, pattern and practice . . . of approving grants for inherently flawed animal-sepsis studies . . . ." ECF No. 1, ¶ 98. The Court dismissed that count "for failure to plausibly identify a sufficiently circumscribed and discrete final agency action." ECF No. 69 at 11. On the same basis, the Court limited the first count to "the five specific grants" identified in the Complaint, finding that count to fail as a matter of law to the extent PETA intended to challenge "any possible animal-involved sepsis research grants" beyond those five. *Id.* In sum, the Court, for good reason, specifically dismissed PETA's claim to the permanent injunction it now seeks—an injunction against NIH's grantmaking policies and practices with respect to what PETA contends are "inherently flawed animal-sepsis studies . . . ." ECF No. 1, ¶ 98. The only APA claim that remained in this case following the Court's Order was PETA's challenge to the five grants

[3] The scope of the APA's waiver of sovereign immunity is limited to "judicial review of only 'final agency action[s]'" *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 839 (4th Cir. 2021) (quoting 5 U.S.C. § 704). Therefore, "whether an agency's action 'constituted final agency action under the APA so as to be reviewable in court' is 'a question of subject matter jurisdiction.'" *Am. Acad. of Pediatrics v. FDA*, 379 F. Supp. 3d 461, 473 n.7 (D. Md. 2019) (quoting *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 458 (4th Cir. 2004)); see also *Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024), *cert. denied*, 145 S.Ct. 2700 (2025).

identified in the Complaint. Now that those grants are spent, and the funded studies are completed, this action is moot.

PETA argues that the forward-looking injunction it now requests "is not overbroad and is appropriately limited to only restricting Defendants from funding sepsis experiments on animals that propose to use the problematic CLP and LPS methods that doom the five grants identified in the complaint." ECF No. 172 at 11. This Court is not persuaded. The equitable relief PETA now seeks reaches beyond the bounds of the Complaint as limited by this Court's Order of partial dismissal to embrace and enjoin a set of grantmaking decisions Defendants have not yet made. As limited by the Court's Order, this action is not a challenge to any NIH grantmaking policy or practice, or any future grant NIH may approve; it is challenge to five grants NIH has already approved against which Plaintiff's Complaint stated a plausible claim for relief. Now that those grants are spent, the action is moot.[4]

Next, PETA appeals to the exception to mootness for wrongs "capable of repetition, yet evading review." ECF No. 172 at 12. This exception is "a narrow one, reserved for 'exceptional' circumstances[,]" which are not present here. *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021) (quoting *Int'l Bhd. of Teamsters, Loc. Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 237 (4th Cir. 2018). It "applies only if '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (quoting *Fed.*

[4] PETA points out that Judge Xinis's Memorandum Opinion specifically recognized that an injunction restricting NIH funding of animal sepsis experiments was a form of relief available to PETA. ECF No. 172 at 10 (citing ECF No. 69 at 8). But the cited passage of the Memorandum Opinion addressed PETA's standing to bring suit, finding that "an injunction that restricts NIH funding of animal sepsis experiments" would redress PETA's injury, as part of its standing analysis. ECF No. 69 at 8. After proceeding to an analysis of whether PETA stated a claim for relief, the Court expressly found that PETA did not have a plausible "'catch all' claim for any possible animal-involved sepsis research grants apart from the five specific grants" named in the Complaint. ECF No. 69 at 11.

*Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). It cannot be said that the multi-year research studies PETA challenges in this case were "too short to be fully litigated prior to cessation or expiration[.]" *Id.* Four of the five grants challenged in this case funded studies that were not completed until at least three years after they were funded. *See* ECF No. 163-2, ¶¶ 7–10. One study was not completed until January 2024, *id.* ¶ 8, and the final study was not completed until January 2026, *id.* ¶ 10—more than five years after it received the challenged grant, and more than four years after PETA filed suit.

While it is true that the five studies were completed while the parties' summary judgment motions were being briefed, it is notable that PETA had procedural mechanisms available to it to avoid its challenge from becoming moot that it failed to deploy. Several courts have recognized an obligation on a plaintiff "to make a full attempt to prevent his case from becoming moot," to include "filing for preliminary injunctions and appealing denials of preliminary injunctions." *Newdow v. Roberts*, 603 F.3d 1002, 1009 (D.C. Cir. 2010) (citing *Minn. Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir.1999)); *see also Empower Texans, Inc. v. Geren*, 977 F.3d 367, 371 (5th Cir. 2020); *Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 57 n.12 (1st Cir. 2013); *People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.* ("*PETA v. FWS*"), 59 F. Supp. 3d 91, 97–98 (D.D.C. 2014). In *PETA v. FWS*, the court found these cases to reflect "a clear policy emanating from federal circuit courts: a party contesting mootness must use every tool available to it to prevent the case from becoming moot[.]" 59 F. Supp. 3d at 98. This rule "ensures [that] only situations that truly evade review in an exceptional way" fall within the narrow exception to mootness. *Newdow*, 603 F.3d at 1009.

Here, it is apparent that PETA did not "use every tool available to it to prevent the case from becoming moot[.]" *PETA v. FWS*, 59 F. Supp. 3d at 98. As in *PETA v. FWS*, PETA here did

not, at any point, move for preliminary injunctive relief against the five challenged studies that were underway when it filed suit and proceeded to completion while the case was pending. In this circumstance, the Court cannot find that the narrow exception to mootness for acts "capable of repetition, yet evading review" applies here.

In sum, the Court finds the instant action to be moot and therefore subject to dismissal for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Rock for Life-UMBC v. Hrabowski*, 643 F. Supp. 2d 729, 740 (D. Md. 2009), *aff'd*, 411 F. App'x 541 (4th Cir. 2010) ("This Court only has jurisdiction to adjudicate actual cases and controversies, and must dismiss for lack of subject matter jurisdiction a case that becomes moot.").

**IV. CONCLUSION**

For the foregoing reasons, the Court shall enter a separate Order dismissing this action.

September 29, 2026
Date

/S/
Matthew J. Maddox
United States District Judge